UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DAWN ARES, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 16-cv-11439-IT |
| | * | |
| NANCY A. BERRYHILL,[1] | * | |
| Acting Commissioner of the Social | * | |
| Security Administration, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

November 15, 2017

TALWANI, D.J.

Pending before this court are Plaintiff Dawn Ares' <u>Motion for Order Reversing the Decision of the Commissioner of the Social Security</u> [#16], seeking judicial review of a final decision denying her application for social security disability insurance benefits ("SSDI") and supplemental security income benefits ("SSI"), and Defendant, Acting Commissioner of the Social Security Administration Nancy Berryhill's <u>Motion to Affirm the Decision of the Commissioner</u> [#18]. For the following reasons, Plaintiff's motion is ALLOWED in part and DENIED in part, Defendant's motion is DENIED, and the matter is REMANDED for further proceedings consistent with this order.

I. <u>Background</u>

　　A. *Procedural and Medical History Through the ALJ's Denial of Plaintiff's First Set of Claims*

Plaintiff's documented history of back pain began in at least the early 1990s, when she

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin.

1

underwent two surgeries for a ruptured disc in her back. A.R. 504 [#13-7]. In September 2005, Plaintiff was seen by Ronald Birkenfeld, M.D., of Associates in Neurosurgery, "complaining of recurrent right leg pain and low back pain." Id. In November 2005, Plaintiff underwent nerve root decompression surgery. Id. at 501-05. Records indicate that Plaintiff had worked during this period but stopped working sometime in 2008. A.R. 384 [#13-5]; A.R. 412-13 [#13-6].

In 2009, Plaintiff filed applications for SSDI and SSI, alleging a disability onset date of February 28, 2008. A.R. 132 [#13-3]. Her application was denied both initially and upon reconsideration. Id. After a hearing on April 8, 2011, the ALJ issued a written opinion on April 26, 2011, finding that Plaintiff was not disabled, and affirming the denials of both SSDI and SSI.[2] Id. at 132-42.

### B. Procedural and Medical History From April 2011 to the ALJ's Initial Denial of Plaintiff's Second Set of Claims

On May 18, 2011, Plaintiff was seen by Rizwan Mufti, M.D., a psychiatrist at Boston Health Care, regarding her mental health. A.R. 537 [#13-7]. Dr. Mufti noted that Plaintiff was glum, downcast, and stated that Plaintiff conveyed to Dr. Mufti her unchanged anxiety, worsening depression, and increased sadness. Id. Based on those observations, Dr. Mufti diagnosed Plaintiff with "Bipolar 2" and an anxiety disorder. Id. Plaintiff was seen four more times by Dr. Mufti in 2011, who noted bipolar, anxiety, and depression symptoms at all of those visits. Id. at 529, 531, 533, 535. Plaintiff returned to Dr. Mufti on six occasions in 2012, and each time Dr. Mufti noted continued depression and anxiety with varying levels of intensity and frequency. Id. at 527, 589, 591, 593, 595, 597.

---

[2] The Appeals Council denied Plaintiff's request for review on August 19, 2011. A.R. 148-53 [#13-3].

2

Also in 2011 and 2012, Plaintiff visited a therapist, Debra Sirota, MSW, LICSW, for examinations related to her depression and anxiety conditions. A.R. 617-18 [#13-7]. Plaintiff met with Ms. Sirota five times in 2011, see id., and twenty times in 2012, id. at 619-23. Ms. Sirota noted depression, irritability, anxiety, racing thoughts, mood swings and disorders, social isolation, decreased concentration, and weight gain due to limited activity. Id. at 617-23.

In addition to appointments with Dr. Mufti and Ms. Sirota, Plaintiff began to see Rania Husseini, M.D., at Brigham and Women's Hospital in 2012, regarding Plaintiff's physical health. Dr. Husseini, Plaintiff's primary care physician, examined Plaintiff three times in 2012. A.R. 578-79, 584, 606 [#13-7]. Dr. Husseini's notes from those examinations detail lower back pain and trouble sitting and standing, while also mentioning anxiety and bipolar symptoms, as well as a severe headache. Id.

Plaintiff returned to Dr. Mufti twice in early 2013 for mental examinations, first on January 3, 2013, at which time Dr. Mufti noted no change in symptoms. A.R. 599 [#13-7]. At the second visit on February 14, 2013, Dr. Mufti noted that Plaintiff appeared to be in remission and was not displaying any symptoms, though Dr. Mufti maintained Plaintiff's diagnosis. Id. at 601. Plaintiff also continued to visit Ms. Sirota in 2013, and was seen by her six times between January 2013 and July 2013. Id. at 623-25, 632-33. Ms. Sirota noted continuing anxiety, depression, irritability, frustration, poor concentration, a racing mind, distractions, bipolar disorder, chronic pain, and sleep disturbance. Id.

Meanwhile, on November 30, 2011, and November 17, 2011, respectively, Plaintiff filed applications for SSDI and SSI, alleging an onset date of February 28, 2008.[3] A.R. 155-56 [#13-

---

[3] On June 28, 2013, Plaintiff moved to amend her alleged onset date to August 20, 2011. A.R. 377 [#13-5].

3

3]. Plaintiff's applications were initially denied in March 2012, A.R. 242-47 [#13-4], and upon reconsideration in July 2012, id. at 250-55. On August 23, 2012, Plaintiff requested a hearing before an ALJ. Id. at 256-68.

On July 11, 2013, Plaintiff received a hearing regarding her SSDI and SSI applications. A.R. 214 [#13-3]. The ALJ considered, among other things, Plaintiff's medical records dating from 2005 through June 28, 2013. Id. at 236-37. The ALJ found that Plaintiff was not disabled. Id. at 214-32.

### C. Procedural and Medical History From July 2013 through Plaintiff's Appeal of the Final Denial of Her Second Set of Claims

On August 19, 2013, after not working since 2008, Plaintiff began working part time in the laundry room of a retirement home. A.R. 390-91 [#13-5].

In late 2013, Plaintiff made her first three visits to psychiatrist Alice Freeman, M.D. A.R. 645-47, 660-63 [#13-8]. During all three visits, Dr. Freeman noted bipolar symptoms, anxiety, depression, angry outbursts, irritability, and decreased concentration of varying severity. Id. On one occasion in late 2013, Plaintiff also saw Dr. Husseini, who noted back issues that prevented Plaintiff from shoveling. Id. at 691.

Plaintiff met with Ms. Sirota eleven times in 2014 for examination. A.R. 634-39 [#13-7]. After each session, Ms. Sirota noted continued anxiety, racing thoughts, irritability, chronic pain, decreased concentration, problems with personal relationships and leaving the house, and a prominent mood disorder. Id.

Plaintiff also continued to visit Brigham and Women's Hospital throughout 2014. Id. at 641-44; A.R. 686, 717-18 [#13-8]. During that time, both Dr. Husseini and a physician's assistant excused Plaintiff from a collective five weeks of work due to a diminished range of motion in Plaintiff's back; reduced strength; and discomfort while sitting, standing, or walking.

4

A.R. 641-44 [#13-7]; A.R. 686, 717-18 [#13-8]. Plaintiff also visited Dr. Freeman multiple times in 2014. Dr. Freeman noted bipolar symptoms, anxiety, lack of concentration, mood swings, a racing mind, depression, and irritability. A.R. 652-59 [#13-8].

On August 20, 2014, the Appeals Council reviewed the ALJ's 2013 disability determination, vacated the ALJ's decision, and remanded the case to the ALJ for a new hearing. A.R. 238-41 [#13-3]. The Appeals Council instructed the ALJ to: (1) address the impact of res judicata in light of Plaintiff's prior applications for disability benefits, (2) consider the treating source opinions and explain the weight given those opinions, (3) further evaluate subjective complaints of pain, and (4) further consider Plaintiff's maximum Residual Functioning Capacity. Id.

On September 3, 2014, Plaintiff stopped working, again citing her back pain as the reason she could no longer work. A.R. 389 [#13-5].

Alison Weisheipl, M.D., of Brigham & Women's Hospital performed an MRI on September 18, 2014, to examine Plaintiff's lower back. A.R. 702 [#13-8]. Dr. Weisheipl's findings detailed mild, moderate, and marked changes in Plaintiff's back, and noted degenerative changes in the impression section of that report. Id. Following the MRI, Plaintiff had two follow-up visits, one with Dr. Weisheipl and one with Dr. Husseini. Id. at 711-14, 717-18. Both Dr. Weisheipl and Dr. Husseini noted continued chronic pain, that injection treatments were not working, and mentioned possible surgical evaluation. Id. Dr. Weisheipl noted worsening of pain with working, walking, lifting, bending, standing, sitting, and lying down. Id. at 711.

On December 12, 2014, Dr. Freeman and Dr. Husseini filled out residual function capacity questionnaires related to Plaintiff's mental and physical condition respectively. Id. at 667-73, 706-10. In the mental impairment questionnaire, Dr. Freeman noted symptoms including

poor memory, appetite, sleep, and mood disturbances, personality change, oddities of speech, social withdrawal and isolation, decreased energy, hostility and irritability, persistent anxiety, recurring panic attacks, loss of interest, agitation, feelings of guilt and worthlessness, difficulty thinking or concentration, and suicidal ideation. Id. at 667-68. Dr. Freeman opined that Plaintiff's condition would last for at least twelve months, and that it exacerbated other physical symptoms. Id. at 669. Dr. Freeman also noted Plaintiff's limited ability to perform many features of unskilled, semiskilled, and skilled work, as well as several functional limitations. Id. at 670-72.

Dr. Husseini also noted many limitations in her residual functional capacity questionnaire. Id. at 706-10. Specifically, Dr. Husseini noted that Plaintiff struggled to walk more than a city block, or to sit or stand for more than thirty minutes. Id. at 708. Dr. Husseini also noted that Plaintiff could only lift less than ten pounds, could only do that occasionally, and could only bend or twist at the waist for less than fifty percent of her day. Id. at 709-10.

On December 17, 2014, the ALJ held a second hearing. See A.R. 94-128 [#13-2]. On February 17, 2015, the ALJ again found that Plaintiff was not disabled. Id. at 13-31. The Appeals Council denied Plaintiff's request to review that decision on May 4, 2016. Id. at 1-6. On July 8, 2016, Plaintiff filed the present action seeking judicial review of that denial. Compl. [#1].

II. Legal Standards

   A. *Standard of Review*

Upon request for judicial review of a decision by the Commissioner of the Social Security Administration, courts have the power to affirm, modify, or reverse that decision, with or without remanding for a rehearing. 42 U.S.C. §§ 405(g), 1383(c). However, the court must uphold a denial of benefits "unless the [Commissioner] has committed a legal or factual error in evaluating a particular claim." Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15,

6

16 (1st Cir. 1996) (per curiam) (internal quotation marks and citations omitted). Courts consider the Commissioner's findings of fact as conclusive if supported by substantial evidence, 42 U.S.C. § 405(g), and must uphold the Commissioner's decision "if a reasonable mind, reviewing the evidence on the record as a whole, could accept it as adequate to support" the decision. Irlanda Ortiz v. Sec'y Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

  *B. Disability Determination*

  The Social Security Administration is authorized to pay SSDI and SSI to persons with a disability. 42 U.S.C. §§ 423, 1383. To aid in the determination of disability status, the Social Security Administration has established a five-step evaluation. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). First, the agency considers whether or not the applicant is working, and whether that employment is substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the applicant is not performing substantial gainful activity, the agency then considers the medical severity of the impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Next, the agency considers whether the applicant's impairment meets or equals a list of impairments the agency has deemed severe enough for a finding of disabled without further assessment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the condition does not meet or equal one of the impairments on the list, the agency then determines the applicant's Residual Functional Capacity, which is an assessment of the applicant's ability to do past work, or other work, with his or her condition. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally the agency considers the applicant's Residual Functional Capacity and other vocational factors such as age, education, and work experience, to determine whether the applicant can find and adjust to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### C. Treating Source Opinions

The Social Security Administration's regulations dictate the manner in which an ALJ must consider medical opinions in making a disability determination. 20 C.F.R. §§ 404.1527, 416.927. As a threshold matter, the ALJ "will always consider the medical opinions" in an applicant's case. 20 C.F.R. §§ 404.1527(b), 416.927(b). The ALJ should also give "more weight" to treating source opinions than non-treating source opinions due to the "unique perspective to the medical evidence" treating source opinions provide. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating source is defined as "a patient's 'own physician, psychologist, or other acceptable medical source' who has provided medical treatment in an ongoing way." Hagan v. Colvin, 52 F. Supp. 3d 167, 174 (D. Mass. 2014) (quoting 20 C.F.R. § 404.1502).

A treating source opinion should be afforded controlling weight if it is well-supported by medically acceptable diagnostic techniques and consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If an ALJ does not give a treating source opinion controlling weight, he or she must then consider six criteria to determine what weight to give the opinion, including the length and frequency of treatment relationship, the nature and extent of the treatment relationship, the amount of evidence supporting the opinion, the opinion's consistency with the record, the specialization of the treating source, and other factors that support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). No matter the weight given to the treating source opinion, the ALJ must "always give good reasons" as to the weight afforded. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Additionally, even when an ALJ provides reasons for discounting a treating source opinion, remand is proper if those reasons are unpersuasive or significantly flawed. See Johnson v. Astrue, 597 F.3d 409, 411-12 (1st Cir. 2009).

III.   Analysis

   A. *ALJ's Findings*

The ALJ first determined that Plaintiff was not involved in substantial gainful activity, and had not been since September 2014. A.R. 16 [#13-2]. Next the ALJ found that Plaintiff had severe impairments including degenerative disc disease, mood disorder, and anxiety. Id. The ALJ then determined that Plaintiff's condition did not rise to the level of listed condition that automatically qualify as a disability, and found that although several limitations were moderate, none were marked. Id. at 16-17. Further, the ALJ determined that Plaintiff had a Residual Functional Capacity to perform "light work" with limitations,[4] id. at 18, but could not perform her past work. Id. at 23. Finally, the ALJ found that, given the Plaintiff's Residual Functional Capacity, age, and education, Plaintiff was capable of adjusting to other work that was available in significant numbers nationally. A.R. 24 [#13-2]. Based on these findings, the ALJ ruled that Plaintiff was not disabled. Id. at 24.

Plaintiff challenges the ALJ's determination on four grounds: (1) the ALJ did not give appropriate weight to the testimony of her treating psychiatrist and physician, (2) the ALJ improperly discredited those opinions, (3) the ALJ did not adequately weigh Plaintiff's testimony about her pain, and (4) the ALJ improperly considered past work experience when determining Plaintiff's Residual Functional Capacity. Defendant rejects all four contentions.

---

[4] The ALJ stated that Plaintiff's light work Residual Functional Capacity did not include climbing ladders, ropes, or scaffolds, crawling, concentrated exposure to vibrations, unprotected heights, and hazardous machinery, and limited her to occasional climbing of stairs or ramps, balancing, stooping, kneeling, or crouching. A.R. 18 [#13-2]. The ALJ also found that Plaintiff could only perform simple, three to four step tasks with occasional decision-making, changes to schedule, or public interaction. Id.

### B. *Psychiatrist testimony and the ALJ's weighing thereof*

Plaintiff first contends that the ALJ erred by refusing to give controlling, or at least substantial, weight to the December 2, 2014, medical opinion of Dr. Freeman, Plaintiff's treating psychiatrist. Pl.'s Mem. 9-10 [#17]; see Hagan, 52 F. Supp. 3d at 174 (considering weight given to opinion of plaintiff's treating psychiatrist, concluding that ALJ erred in giving little weight to such opinion).

The ALJ considered Dr. Freeman's December 12, 2014, "Mental Impairment Questionnaire" which noted that Plaintiff suffered from severe depression, agoraphobia, panic attacks, ADD, and irritability, among other symptoms, A.R. 667-73 [#13-8], but did not "accord much weight to Dr. Freeman's opinion." A.R. 22 [#13-2]. The ALJ stated that despite recognizing Dr. Freeman as a treating source, id. at 21-22, Dr. Freeman's opinion was inconsistent with the record and with Plaintiff's part-time work and daily living, and was not based on any clinical findings. Id. The ALJ further noted that Dr. Freeman "seems to have just checked off boxes in a mental impairment questionnaire." Id.

As an initial matter, despite the fact that the ALJ recognized Dr. Freeman as a treating source, the ALJ failed to provide any written analysis of four of the six criteria required for assessment of treating source opinions. Id. at 21-22. For example, although the record indicates that Dr. Freeman treated Plaintiff at least nine times in the sixteen months preceding the questionnaire, the ALJ's decision did not discuss the extent, length, or frequency of Dr. Freeman's treating relationship with Plaintiff, nor Dr. Freeman's specialization. Id. at 22; A.R. 645-73 [#13-8].

Further, the ALJ's reasoning is unpersuasive in several respects. First, the decision does not grapple with a large swathe of contradictory evidence. Although an ALJ need not address all evidence in the record, and the failure to mention evidence is insufficient to show that the ALJ

did not consider it, N.L.R.B. v. Beverly Enterprises-Massachusetts, Inc., 174 F.3d 13, 26 (1st Cir. 1999), an ALJ may not cherry-pick evidence to support his or her findings without referencing contradictory evidence. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). Here, the ALJ's decision discounted Dr. Freeman's opinion based on other psychiatric records containing "evidence of unremarkable mental status examinations," without citation or reference to any such records, A.R. 22 [#13-2], and without reference to more than one year of mental health evaluations that indicated a possible deterioration of Plaintiff's condition, A.R. 645-66 [#13-8].

Second, the decision appears to have misinterpreted or mischaracterized other evidence to support the conclusion that Dr. Freeman's opinion was inconsistent with that evidence. A medical opinion is not inconsistent with a claimant's medical history where more recent records indicate a significant worsening of the claimant's condition. See Soto-Cedeño v. Astrue, 380 Fed. App'x. 1, 3 (1st Cir. 2010). Such records were available here. For example, the decision characterized Plaintiff's work experience as inconsistent with Dr. Freeman's opinion. Compare A.R. 18 [#13-2] ("[Plaintiff] worked steadily from August 2013 until September 5, 2014") with id. at 114 (detailing Plaintiff's failure to attend work due to either back pain or depression). However, Plaintiff testified in 2014 that during her employment as a part-time laundry worker, she would miss work three times a month due, in part, to her depression, and had several arguments with her co-workers and supervisors in which she lost her temper and yelled.[5] Id. at 114-17. Far from contradicting Dr. Freeman's opinion, that testimony—which is un-contradicted elsewhere in the record, see generally A.R. [#13]—supports Dr. Freeman's opinion that Plaintiff

---

[5] Plaintiff testified that her back pain, bipolar disorder, and anxiety caused her to stop working, A.R. 102 [#13-2], that she missed work three times a month due to her depression, and had difficulties getting along with supervisors, id. at 114, that she yelled at, lost her temper with, and cursed at, her co-workers, id. at 114-16, and that she would take three to four unscheduled breaks a day to "regroup." Id. at 120-21.

11

was "seriously limited" in her ability to "maintain regular attendance and be punctual," to "[g]et along with co-workers," and to "complete a normal workday . . . without interruption from psychologically based symptoms." A.R. 670-71 [#13-8]. It also supports Dr. Freeman's finding that Plaintiff had "no useful ability to function" in "deal[ing] with normal work stress." Id.

Further, the decision characterized Dr. Freeman's opinion as inconsistent with Plaintiff's ability to work part time and to perform activities of daily life. A.R. 22 [#13-2]. However, the activities to which the decision points, such as working 20 hours a week, id., and the activities to which Plaintiff testified performing, such as watching television, "very light" household chores, and helping her daughter do homework, id. at 73-74, do not contradict Dr. Freeman's finding of the impact of Plaintiff's mental condition. Additionally, the decision gave weight to the fact that Plaintiff lives alone, takes care of her personal needs, does chores, and watches television. A.R. 18-19 [#13-2]. But the decision also recognized that Plaintiff's sister does many of those chores for her, such as laundry and food shopping. Id. at 19. Moreover, the fact that Plaintiff was at some point able to do those things does not contradict the opinion of Dr. Freeman that Plaintiff possess "poor" mental abilities needed to "[i]nteract appropriately with the general public" and "[m]aintain socially appropriate behavior." A.R. 672 [#13-8]. It also does not contradict Dr. Freeman's finding that Plaintiff suffered "extreme" limitations in "maintaining social functioning" but only "moderate" limitations on "activities of daily living." Id.

Finally, the decision stated that Dr. Freeman's opinion would not be accorded much weight because it offered no objective clinical findings, and "she seems to have just checked off boxes." A.R. 22 [#13-2]. Although in certain circumstances, "check-box" opinions may be entitled to relatively little weight, see Berrios Lopez v. Sec'y Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991) (stating that opinions that are "mere[ly] checking of boxes denoting

12

levels of [Residual Functional Capacity]" have been given little weight when performed by "*consulting, non-examining* physicians"), Dr. Freeman's opinion cannot fairly be characterized as such. A.R. 667-73 [#13-8]. Dr. Freeman had a sixteen-month treating relationship with Plaintiff prior to forming her medical opinion, and provided comments in addition to, and written beside, the boxes checked off. A.R. 645-73 [#13-8].

Because the decision does not properly consider and weigh the psychiatrist testimony, this case will be remanded for reconsideration of the weight to accord Dr. Freeman's opinion, and for further description of the reasons for that weight.

    *C. Physician testimony and the ALJ's weighing thereof*

Plaintiff next contends that the ALJ's decision is erroneous for refusing to give controlling or substantial weight to the treating physician opinion of Dr. Husseini, rendered on December 12, 2014. Dr. Husseini's opinion, a "Physical Residual Functional Capacity Questionnaire," A.R. 706-10 [#13-8], stated that Plaintiff was diagnosed with chronic low back pain, lumbar radiculopathy, and sacroiliitis and would experience severe pain in her back and right leg for at least 12 months. Id. at 706. Dr. Husseini found that Plaintiff could only sit for less than one hour and could only occasionally lift less than ten pounds. Id. at 708-09.

The decision stated that the opinion of Dr. Husseini would "not [be] accord[ed] much weight," because it was inconsistent with Plaintiff's overall medical record. A.R. 22 [#13-2]. Here too, however, despite recognizing Dr. Husseini as Plaintiff's treating physician, id. at 20, the decision contains little written description of the reasons behind that weight. Id. at 13-24. For example, the decision does not mention the length, extent, or frequency of Dr. Husseini's treating relationship with Plaintiff, despite the record revealing that Dr. Husseini had treated Plaintiff numerous times since February 2010. A.R. 13-24 [#13-2]; A.R. 572-85, 615-16 [#13-7]; A.R.

13

717-18 [#13-8]. Furthermore, the decision does not reference Dr. Husseini's specialization or familiarity with the Social Security process or other information in the case. A.R. 13-24 [#13-2].

Again the reasons given for rejecting the treating doctor's opinion are unpersuasive. See Johnson v. Astrue, 597 F.3d 409, 411-12 (1st Cir. 2009). First, the decision mischaracterized cited documents. A.R. 20 [#13-2]; A.R. 578-79 [#13-7]. For example, the decision references a physical examination of Plaintiff on February 2, 2012, which is characterized as stating that Plaintiff was "within normal limits." A.R. 20 [#13-2]. However, the record of that examination did not reference Plaintiff being "within normal limits," and instead noted three times that Plaintiff experienced back pain, and had trouble sitting and standing. A.R. 578-79 [#13-7]. Similarly, the decision references a physical examination from December 16, 2013, where Plaintiff was found to have "no decreased range of motion or joint swelling." A.R. 21 [#13-2]. Although that finding is noted on the examination report, it is limited to Plaintiff's lower extremities, and made no mention of her back. A.R. 692 [#13-8]. Thus, the examination does not contradict Dr. Husseini's later opinion, which focused primarily on pain and tenderness in the Plaintiff's back. Compare id. ("On focused physical exam, the bilateral lower extremities are warm and well perfused with normal full range of motion, no joint swelling and no edema") with id. at 706 (identifying clinical findings and objective signs supporting opinion as "back pain/tenderness"). Furthermore, the record reflects that Dr. Husseini had access to the December 2013 examination when preparing her evaluation. Id. at 692-93. Moreover, later physical evaluations indicate that Dr. Husseini found Plaintiff suffered from back pain. See id. at 689 ("spasm noted at [lower back], which is tender to palpation . . . diminished [range of motion] in all directions, worse with extension. + Tenderness with [range of motion] all directions"); id. at

686, 706-10 (stating that the Plaintiff suffered from back pain and is unable to sit for more than ten minutes or stand for more than twenty minutes).

Second, the decision drew several unsupported inferences from record. A.R. 21-22 [#13-2]; A.R. 641-44 [#13-7]. For example, the decision references doctors' notes from September 4, 2014, and October 10, 2014, indicating that Plaintiff could return to work on September 15, 2014, and October 28, 2014, respectively. A.R. 641, 644 [#13-7]. From that, the decision appears to have concluded that Plaintiff was in fact able to work on September 15, 2014, and October 28, 2014. A.R. 21-22 [#13-2]. However, this conclusion ignores two other notes from September 15, 2014, and September 26, 2014, in which Dr. Husseini extended the time during which Plaintiff was excused from work. A.R. 642-43 [#13-7]. Viewing the four notes sequentially, and with an eye to the record as a whole, they show that Dr. Husseini found Plaintiff unable to work continuously from September 4, 2014, until October 28, 2014, Id. at 641-44, at which time Plaintiff's employer had notified her she would not be allowed to return to work. A.R. 112 [#13-2].

Finally, the decision interpreted an MRI beyond the findings that are plainly apparent from a lay perspective. See Nguyen, 172 F.3d at 35; A.R. 22 [#13-2]; A.R. 702 [#13-8]. The decision characterized Dr. Husseini's opinion as inconsistent with a September 18, 2014, MRI. A.R. 22 [#13-2]. Although the decision quotes the "impression" of the MRI, id. at 21; A.R. 702 [#13-8], it fails to explain how that impression is inconsistent with the back pain or tenderness upon which Dr. Husseini based his opinion. A.R. 21 [#13-2]; A.R. 702 [#13-8].

Plaintiff also asserts that the ALJ's use of the MRI in this manner amounts to a prohibited interpretation of raw medical data. See Nguyen, 172 F.3d at 35 ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical

15

opinion supported the determination."). Although Defendant contends that the decision simply summarized the radiologist's impression of the exam, that summary would be incomplete at best, given the radiologist notes reflecting changes ranging from mild to marked. A.R. 702 [#13-8]. Further, although Defendant argues that the decision relied on a treatment note considering the MRI, that note does not "relate [the diagnosis] to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a)." See Rosado v. Sec'y Health & Human Servs., 807 F.2d 292, 293 (1st Cir. 1986).

Because the decision does not properly consider and weigh the treating physician testimony, this case will be remanded for reconsideration of the weight to accord Dr. Husseini's opinion, and for further description of the reasons for that weight.

  *D. Subjective testimony and the ALJ's weighing thereof*

Third, Plaintiff contends that the decision did not adequately consider Plaintiff's subjective complaints of pain and mental health symptoms when determining the intensity and persistence of those symptoms. Defendant contends that the ALJ did consider, but simply elected to discredit, Plaintiff's complaints. Def.'s Mem. 16 [#19]. When considering how symptoms limit an individual's functional capacity, an ALJ must consider whether there is a medically determinable impairment that could cause the complained of symptoms and then determine whether the intensity and persistence of those symptoms limits a person's capacity to work through examination of various sources submitted by the claimant as proof of their condition. 20 C.F.R. § 416.929. When weighing subjective complaints in relation to determining the severity or intensity of symptoms, an ALJ may "not discount pain complaints simply because the alleged severity is not corroborated by objective medical findings." Small v. Astrue, 840 F. Supp. 2d 458, 464 (D. Mass. 2012) (citing Carbone v. Sullivan, No. 91-1964, 1992 WL 75143, at *5 (1st Cir. Apr. 14, 1992)).

16

Here, the ALJ found the Plaintiff's complaints as to the intensity and limiting effects of her symptoms "not entirely credible," A.R. 19 [#13-2], because the complaints were purportedly inconsistent with objective medical findings elsewhere in the record. However, such a conclusion is improper. See Small, 840 F. Supp. 2d at 464. Further, the other evidence available to the ALJ, such as Plaintiff's work history and "activities of daily living," is not inconsistent with Plaintiff's subjective complaints. For example, Plaintiff testified that she is able to wash and shower. A.R. 110 [#13-2]. These simple tasks are not strenuous, and do not require Plaintiff to interact with the public or with her co-workers. Plaintiff testified that her sister does Plaintiff's laundry, and this reliance on her sister is consistent with her other testimony regarding her limitations. Similarly, Plaintiff's testimony that she could drive to work or to the grocery store is not inconsistent with her professed inability to sit for prolonged periods of time. Her drive to work is approximately six minutes, id. at 107, and her drive to the grocery store is approximately ten minutes, id. at 108, neither of which could reasonably be considered a prolonged period. By contrast, the only mention anywhere in the record of a drive longer than ten minutes is a single drive to Framingham, Massachusetts from Foxborough, Massachusetts to meet her attorney prior to her final hearing with the ALJ. Id. at 106-07.

Finally, as discussed above with respect to Dr. Freeman and Dr. Husseini's Residual Functional Capacity questionnaires, the ALJ's interpretation of Plaintiff's work history as "steady" and inconsistent with her alleged symptoms, is inaccurate. Compare id. at 18 (detailing ALJ's opinion that Plaintiff worked steadily for a year) with id. at 114 (detailing struggles by Plaintiff to maintain work attendance). Plaintiff testified that she often took breaks, missed days of work, left work early, got in fights with coworkers and supervisors, and was ultimately fired due to excused absences related to her back pain. A.R. 114 [#13-2].

17

Because the decision does not properly consider and weigh the Plaintiff's subjective testimony, this case will be remanded for reconsideration of the same.

### E.  *Past work ability and ALJ's consideration thereof*

Finally, Plaintiff contends that the ALJ improperly relied on Plaintiff's prior work ability to determine her Residual Functional Capacity—in other words, that Plaintiff could work eight hours a day, five days a week. Pl.'s Mem. Supp. Mot. For Order Reversing Decision of Commissioner of Social Security Administration ["Pl.'s Mem."] 19-20 [#17]. To determine a claimant's Residual Functional Capacity, an ALJ must consider "all of the medical and vocational evidence" in a case. 20 C.F.R. § 416.971. The ALJ is also allowed to consider past work experience, even that which does not rise to the level of substantial gainful activity, in determining whether or not a person is able to work at the substantial gainful activity level, but may not rely only on past work experience in making that determination. Id. Even where an ALJ makes an error in weighing evidence, or in not fully elaborating on his or her reasoning, a district court may affirm the ALJ's decision where it is still supported by substantial evidence, or where the same result would be reached regardless of remand. See Manso-Pizarro, 76 F.3d at 16.

Here, the ALJ's Residual Functional Capacity determination was not supported by substantial evidence. The ALJ considered medical reports and treatment notes from the time Plaintiff alleged disability, see A.R. 10-24 [#13-2], and was also within her discretion to consider Plaintiff's work experience at the times relevant to Plaintiff's claim of disability. 20 CFR § 416.971. However, as discussed above, the ALJ erroneously interpreted and weighed that evidence. Additionally, the vocational expert upon whom the ALJ relied based his testimony on the ALJ's perception of Plaintiff's capabilities, which in turn were based on the ALJ's erroneous interpretation and weighing of the evidence. See A.R. 24, 121-27 [#13-2]. Because the ALJ's decision is not supported by substantial evidence, it is unclear whether the same result would be

reached on remand. This case must therefore be remanded for further proceedings to determine, on the basis of substantial evidence, the Plaintiff's Residual Functional Capacity and, in turn, her disability status.

IV.     Conclusion

For the foregoing reasons, Plaintiff's Motion for Order Reversing the Decision of the Commissioner of the Social Security [#16] is ALLOWED IN PART AND DENIED IN PART, Defendant's Motion to Affirm the Decision of the Commissioner [#18] is DENIED, and this matter is REMANDED for further proceedings consistent with this order.

IT IS SO ORDERED.

Date: November 15, 2017                         /s/ Indira Talwani
                                                United States District Judge